IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALL FUNDS HELD IN WELLS FARGO BANK ACCOUNT #1442712798;

        Defendant.

---

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

---

The United States of America, by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

### JURISDICTION AND VENUE

1.    The United States of America ("the "United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C), 18 U.S.C. § 984, seeking forfeiture of defendant asset based upon violations of 18 U.S.C. §§ 201, 208, 666, 1343, 1956, 1957 and 1347, and 42 U.S.C. § 1320a-7b(b).

2.    Venue is proper under 28 U.S.C. § 1355(b), as the defendant asset may be brought in any district where any of the underlying acts were or omissions occurred upon which the forfeiture based.

### DEFENDANT PROPERTIES

3.    Defendant property is more fully described as:

a.      All funds, totaling approximately $273,153.89, seized from Wells Fargo

checking account #1442712798, located at 5117 S. Yosemite Street, Greenwood Village,

Colorado, held in the name of Regional Home Health Care Systems, East LLC, currently

in the custody of United States Marshal Service, Denver, Colorado, in the seized asset

deposit fund account.

## OVERVIEW OF THE SCHEME

4.      Joseph C. Prince was employed by the Department of Veterans Affairs

(VA) in the Office of Community Care in Denver as a Beneficiary/Provider Relations

Specialist for the VA's Spina Bifida (SB) Health Care Benefits Program.

5.      Prince had been employed by the VA since 1995. Prince received

numerous promotions throughout his career with the VA, but in October 2014, Prince

was downgraded from a GS-11 step 8 to a GS-9 step 10 for failure to complete a

performance improvement plan. In or around October 2016, Prince moved his role as

Beneficiary/Provider Relations Specialist. Prior to being employed by the VA, Prince

served in the U.S. Army from 1979 through 1994.

6.      The VA's Spina Bifida Health Care Benefits Program provides benefits to

certain Korea and Vietnam Veterans' birth children, who had been diagnosed with spina

bifida.  This program pays for beneficiaries' health care, including unskilled home health

aide services and homemaking services, as discussed further below.  The VA's SB

Health Care Benefits Program is a federal health care program under 18 U.S.C. § 24(b).

7.      As a Beneficiary/Provider Relations Specialist, Prince was responsible for

maintaining expertise in the benefits program, acting on behalf of beneficiaries and

health care providers on questions and issues requiring problem resolution, and

coordinating with health care providers to ensure effective claim processing, among numerous other duties.

8.      Beginning in or around June 2017, Prince used his position with the VA to solicit beneficiaries to sign on to receive home health benefits and then structured the home health and homemaking services program to financially benefit himself in three ways: (1) by referring beneficiaries to a home health agency owned by his family members and other associates, and to a company in which he had a personal financial interest, (2) by soliciting and receiving bribes or rewards and kickbacks from home health agencies owned or controlled by his associates and to which he referred beneficiaries; and (3) by causing and facilitating overbilling by the home health agencies.

## II.  Background and Regulations Regarding the Department of Veterans Affairs Spina Bifida Health Care Benefits Program

9.      The Department of Veterans Affairs (VA) provides monetary allowances, vocational training and rehabilitation and VA- financed health care benefits to certain Korea and Vietnam Veterans' birth children, who have been diagnosed with Spina Bifida (SB). *See* 38 C.F.R. §17.901.

10.     The Veterans Health Administration Office of Community Care in Denver, Colorado, manages the VA's SB Health Care Benefits Program, including authorization of benefits and the subsequent processing and payment of health care claims after a determination of eligibility has been made by the Denver, Colorado, VA Regional Office. For covered benefits, the VA is the exclusive payer for covered services, regardless of

any third party insurer, Medicare, Medicaid, health plan, or any other plan or program providing health care coverage. 38 C.F.R. §17.901 (note).

      11.    The Health Care Benefits Program pays for "home care", which is defined to include the following health-related services:

a. "Home health aide services," are defined as "providing personal care and related support services to an individual in the home or other place of residence." 38 C.F.R. § 17.900. These services "may include assistance with Activities of Daily Living such as: Bathing; toileting; eating; dressing; aid in ambulating or transfers; active and passive exercises; assistance with medical equipment; and routine health monitoring.." *Id.* Home health aide services must be provided according to the individual's written plan of care and must be prescribed by an approved health care provider. *Id.* This is documented on a Form CMS-485 ("Home Health Certification and Plan of Care").

b. Homemaker services "include assistance with personal care; home management; completion of simple household tasks; nutrition, including menu planning and meal preparation; consumer education; and hygiene education." Such services "may include assistance with Instrumental Activities of Daily Living, such as:  Light housekeeping; laundering; meal preparation; necessary services to maintain a safe and sanitary environment in the areas of the home used by the individual; and services essential to the comfort and cleanliness of the individual and ensuring individual safety." *Id.* The law requires that homemaker services must be provided according to the individual's written plan of care and must be prescribed by an approved health care provider. *Id.*

Coverage for homemaker services requires preauthorization. *Id.* §17.902. This means coverage will be provided only where it is demonstrated that the care is medically necessary. Preauthorization requests must be made to the Health Administration Center and include the type of service requested, the medical justification, the estimated cost, and the name, address, and phone number of the provider.

12. Specifically excluded from these types of service are incidental services such as shopping, companion services, and personal attendant services that are not health-related. *See* Spina Bifida Health Care Benefits Program Policy Manual 2.09 ("Home Care").

13. Health care paid for by the VA's SB Health Care Benefits Program can be provided by the VA directly, by contract with an approved health care provider, or by "other arrangement with an approved health care provider." *Id.* § 17.901(c). An "approved health care provider" is defined as a health care provider that is approved by one of a few specified agencies or that is approved for providing health care under a license or certificate issued by a governmental entity with jurisdiction. *Id.* § 17.900.

14. To be paid by the VA, an entity must be entered into the VA system as a vendor. This requires the company to submit a standard form 3881 along with an IRS form W-9 to the VA. One key piece of information required to become a vendor is a National Provider Identifier (NPI). Once entered as a vendor, the provider is able to receive payments.

15. Payment for services rendered by a provider will be issued when claims are submitted to the Health Administration Center with all required information, to

include dates of services and all procedures performed. *Id.*§17.903. A provider can

submit claims for services up to one year after the date of service, but in case of

"retroactive approval for health care, 180 days following beneficiary notification of

eligibility." *Id.* §17.903(a)(3). The payment schedule is set by the VA.  *See* Spina Bifida

Health Care Benefits Program Policy Manual, Chapter 3.

16.     VA policy addresses provision of home health services by a family

member of the covered beneficiary in just one circumstance, bowel and bladder care.

Such care is often required by individuals with SB, and the VA policy provides that such

care may either be provided by a registered health care provider or a "family member

who has been trained and certified by a licensed health care provider."  SB Policy

Manual, Chapter 2 and 9.1 (Bowel and Bladder Care).  Bowel and bladder services

provided by a family member are covered up to four hours each day "when appropriate

and supported by medical documentation." Family members who have been approved

to provide this care submit their claims directly to the VA for payment and are paid

approximately $15.50 per hour.  See SB Policy Manual, Chapter 3 (referring to hourly

rate paid to nursing assistants in accordance with VA Federal Service General

Schedule, Grade 5, Step 5, basic rate without adjustments).

## III. PRINCE'S SOLICITATION OF BENEFICIARIES AND REFERRAL TO ASSOCIATED HOME HEALTHCARE AGENCIES

17.     Part of Prince's duties included fielding calls from SB beneficiaries or their

family members or caretakers.  In this context, either when he received a call from a

beneficiary or caretaker or by reaching out directly to such individuals, Prince would

inform beneficiaries and/or their caregivers that they were entitled to home health

services through the VA.  Prince would tell them that the caregivers could receive

payment for providing home health by signing up as a contractor through a home health

care agency. In some instances, he would also coach them on the number of hours of

services they could claim and send prepopulated forms to the beneficiaries identifying

the number of hours to provide. He would also have them submit claims for one year

retroactive for the same number of hours.

18.     Prince would then refer the beneficiaries or caretakers directly to a home

health care agency ("HHA") that was controlled by his wife or other associates (the

"subject HHAs"), or in which he had a financial interest. The subject HHAs submitted

claims totaling millions of dollars to the VA, which the VA paid.  Several of the subject

HHAs then paid Prince in exchange for the referrals.

19.     As part of the investigation, law enforcement agents have listened to

numerous phone calls made and received by Prince from his VA office phone,

telephone number 303-331-7786.  The recorded calls reflect that beneficiaries and

caregivers reach out to Prince for many reasons, to include discussing claims that they

have filed or that have been filed on their behalf and making sure they are getting paid

appropriately. During these calls, Prince often takes the opportunity to explain the

benefits he says they are missing out on.

20.     Prince tells the caregivers that they can receive the payments discussed

above for their caregiving, without regard to whether they are "approved health care

providers," as required by regulation.  Prince tells the caregivers they have companies

that he works with often and knows they are good, that they pay the most, that they are

"vetted" or "preferred providers" for the program, or other positive reasons for him setting up the beneficiaries with a particular company.

21. Prince then refers the beneficiaries or caregivers to the subject HHAs, none of which were "approved health care providers," as required by regulation. Additionally, none of the HHAs offered nurse supervision of the caregivers, as required by operational policy. Next, the agencies sign up the caregivers as independent contractors, paying them different rates; ranging from $16 to $20 per hour. The allowable rate to bill the VA is in accordance with published Medicare rates (or CMAC) that are adjusted according to locality. The chart below shows the rates allowable for each of the subject HHAs and what the subject HHAs billed per unit. Each unit represents 15 minutes.

| HHA | Location | Billed/unit | Billed/hour | CMAC 2017 (per unit/per hour) | CMAC 2018 (per unit/per hour) |
|---|---|---|---|---|---|
| Advantage HHA | Aurora, CO | $22.50 | $90 | $24.39 / $97.56 | $35.29 / $141.16 |
| Genesis HHA | Aurora, CO | $22.57-24.39 | $90.28-$97.56 | $24.39 / $97.56 | $35.29 / $141.16 |
| Gracewood HHA | Fort Collins, CO | $22.00 | $88 | $24.39 / $97.56 | $35.29 / $141.16 |
| Legacy HH | St. Petersburg, FL | $21.50 | $86 | $24.39 / $97.56 | $35.29 / $141.16 |
| Regional Home Health Care Systems | Lithia Springs, GA | $22.00 | $88 | $24.39 / $97.56 | $35.29 / $141.16 |

22.    The contract between the HHAs and the independent contractor is not monitored or regulated by the VA. The

23.    In addition to the home health services, beneficiaries can receive homemaker services if preauthorized and subject to a plan of care. The CMAC rates for 2017 were $4.88 per unit or $19.50 per hour. The CMAC rates for 2018 were $5.00 per unit or $20 per hour.  In the beginning of the scheme, the subject HHAs submitted claims for both homemaker and home health services. Over time, most of the claims submitted were for home health services only. During some of Prince's calls with caregivers or beneficiaries, he tells them that they should do homemaking services but bill them as home health because that pays more.

### Subject Home Health Agencies

24.    Prince referred the majority of beneficiaries to the following subject HHAs: Advantage Home Health Agency, Genesis Home Health Agency, Legacy Home Health Agency, Gracewood Home Health Agency, and Regional Home Health Agency.

25.    Advantage Home Health Agency ("Advantage") is a Colorado Limited Liability Corporation incorporated on July 31, 2017.  Advantage established an NPI on August 1, 2017.  Advantage submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than August 28, 2017. The registered agent is Flavia Nalunga Prince ("Nalunga"), Prince's wife, and the registered address (at the time the business was formed) is 5877 S. Duquesne Court, Aurora, Colorado 80016 (Prince's residence). The business address has since been updated to be a P.O. Box at a UPS Store near the Princes' residence. Advantage does not have an internet presence such as a website or social media page.

26.     In total, as of August 16, 2018, the VA had paid Advantage approximately $4,335,851 in payments for claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince in order to directly benefit Prince's wife and himself.

27.     Upon review of the known bank statements as of June 14, 2018, Advantage did not have any other significant sources of income.

28.     Genesis Home Health Agency ("Genesis") is a Colorado limited liability corporation incorporated on August 29, 2016.  Genesis established an NPI on March 1, 2017. Genesis submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than May 15, 2017. The registered agent is Andrew Ssekajja and the registered address is 5877 S. Duquesne Court, Aurora, Colorado 80016.  Ssekajja is a licensed pharmacist in Colorado. Genesis does not have an internet presence such as a website or social media page.

29.     In total, as of August 16, 2018, the VA had paid Genesis approximately $3,199,339 in payments for claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.

30.     Upon review of the known bank statements, as of June 14, 2018, Genesis did not have any other significant sources of income.

31.     Legacy Home Health, LLC (Legacy) is a Florida limited liability corporation incorporated on September 25, 2017.  Legacy established an NPI in or around September 2017. Legacy submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than October 30, 2017. The Registered agent is Roland Vaughn at 970 Lake Carillon Drive, Suite 300, St. Petersburg, Florida 33716.  Vaughn was a real

estate agent in Colorado for 15 years and acted as the realtor when Prince purchased his home at 5877 S. Duquesne Court, Aurora, CO 80016 in 2014.  Legacy does not have an internet presence such as a website or social media page.

32.     In total, as of August 16, 2018, the VA had paid Legacy approximately $3,039,761 in payments for claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.  Prince had an agreement with Vaughn to receive approximately forty percent of the net proceeds from Legacy.

33.     Upon review of the known bank statements as of March 25, 2018, Legacy did not have any other significant sources of income.

34.     Gracewood Home Health Agency (Gracewood) is a Colorado limited liability corporation incorporated on November 10, 2017.  Gracewood established an NPI on November 16, 2017. Gracewood submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than December 18, 2017. The registered agent of Gracewood is Glenn Beach at 1281 East Magnolia Street, Unit D, Ft. Collins, Colorado 80524.  Glenn's wife, Catherine Beach, is also listed on the Articles of Organization as the person forming the business, Gracewood.  According to Colorado Department of Labor, Catherine Beach last received wages from Thompson School District R2J in 2011. Bank records show that she receives income from multi-level marketing schemes as well. Glenn Beach last received wages in Colorado from Wolf Robotics LLC in 2009. Gracewood does not have an internet presence such as a website or social media page.

35.     In total as of August 16, 2018, the VA has paid Gracewood approximately $1,440,512 for fraudulent claims submitted under the VA's SB Health Care Benefits

Program.  The Beaches and Prince had an agreement that Gracewood would pay approximately fifty percent of its net revenue to Prince.

36.    Upon review of the known bank statements as of May 31, 2018, Gracewood did not receive business income from or have any other source of income during this time-frame.

### Regional Home Health Care System

37.    Prince's half-sister, Marcelline Stripling (nee McCrea), established three home health agencies in Lithia Springs, Georgia: 1) Regional Home Health Care Systems, LLC, incorporated on August 21, 2017, 2) Regional Home Healthcare Systems, North LLC, incorporated on February 23, 2018, and 3) Regional Home Healthcare Systems, East LLC, incorporated on March 4, 2018 (collectively, these businesses are referred to as "Regional").  Joseph Prince has a financial interest in Regional Home Healthcare Systems, East, LLC.  He was identified on bank accounts for that entity as a signatory with financial control over the accounts. Regional submitted its NPIs along with Forms W-9 to the VA and became a vendor no later than September 26, 2017. Regional does not have an internet presence such as a website or social media page.

38.    In total, as of August 16, 2018, the VA has paid Regional approximately $7,191,879.00 in payments for fraudulent claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.

39.    Upon review of the known bank statements as of May 31, 2018, Regional did not have any other significant sources of income.

40.    Examples of the referrals made by Prince to Regional are as follows:

a.   On April 18, 2018 Congressman John Moolenaar, U.S. Representative for the 4th District in Michigan, received a complaint from E.L. about the VA's SB Health Care Benefits Program in which E.L. wrote the following (in summary):

> Our daughter is in the Spina Bifida Program. The program has a provision to provide health care for her at home for the rest of her life. We were told that we would be paid for this. We signed a contract with a company that would take care of getting us paid, but they didn't tell us that they got to keep 82% and pay us 18% for doing all the work. This is highway robbery.

The complaint included a copy of the contract and a one-page example of an Explanation of Benefits received by E.L. on behalf of his daughter.

b.   E.L. was interviewed by FBI and VA-OIG agents on May 16, 2018. During the interview E.L. explained how he came to send a complaint to the Representative. E.L. reached out to the VA in October 2016 and received a packet of information including a description of the benefits provided to beneficiaries of the VA's SB Health Care Benefits Program including the home health care benefits from employee I.K.

c.   E.L. reached out again in early 2018 and was told to talk to Prince regarding his questions. Prince explained the program to E.L.  When E.L. asked which company to sign up with, Prince told him Regional because they were the best ones and paid the most.  Prince put E.L. in contact with Marcelline Stripling at Regional who provided the contracts and other

paperwork to get started. The contract was between G.L. (E.L.'s wife) and Regional. Regional was going to pay G.L. $16 per hour.

d. E.L. discussed the contracts and signing up with Regional with both Stripling and Prince.  Prince informed E.L. that the VA also allowed to bill for services rendered up to a full year ago.

e. G.L. completed time sheets for each week starting in or around February 2017 through present for 20 hours per day for care of their daughter and submitted them to Regional.

f. Upon approval of the claims, the VA sends out an Explanation of Benefits (EOB), as they do when patients receive any type of benefit.  When E.L. received the first EOBs in April 2018, he noticed that for six days of care in 2017, Regional billed the VA $10,560, but G.L only received $1,920.

g. E.L. contacted Stripling about the difference.  Stripling told E.L. that Regional had overhead.

h. On April 3, 2018, E.L. called Prince to complain about the difference.

i. With respect to separate beneficiaries Prince referred to Regional, as examples:

   i. In a telephone call on May 10, 2018, a female, C., asks Prince, "you know that lady you set us up with? That Marcelline Stripling?" C. continues to explain that she has not received the check that Stripling was supposed to send her.

   ii. In a telephone call on May 10, 2018, a caregiver, J.P., calls Prince to complain about the current company that is submitting claims on their

behalf and gets a referral from Prince for a new company and Prince

suggests she call Marcelline Stripling with Regional Home Health

Systems.

## IV. ILLEGAL PAYMENT OF REWARDS AND KICKBACKS

41.     Advantage, Regional, Legacy, Genesis, and Gracewood were all

established by individuals who had connections to Prince and no apparent prior history

with home health.  The companies were all established shortly before beginning to

submit claims to the VA, and based on bank records obtained to date, none of the

agencies have any income generated through other patients outside of the VA's SB

Health Care Benefits Program.

42.     After receiving payments on their claims from the VA, the agencies

identified below sent payments to Prince either directly to Prince's personal bank

accounts and business accounts controlled by Prince, or indirectly to Prince's wife and

children. In total, based on records available as of the various dates listed in the

proceeding paragraphs, covering the time period up through as recent as June 19,

2018, Prince benefited in the amount of approximately $2.32 million, broken out by HHA

below:

- Advantage sent payments of approximately $732,475 to accounts controlled

  by Prince or related parties, including:

    iii. $568,649 to personal accounts in the names of Prince and Nalunga;

    iv. $19,500 in wires and cashier's checks payable to Nalunga;

    v. $50,000 to a SEP IRA account in the name of Joseph Prince;

    vi. $50,000 to a SEP IRA account in the name of Nalunga;

     vii.  $24,326 check payable to Doctor Fix.  The memo line of the check stated "HVAC Equipment."

    viii.  $10,000 to a savings account in the name of Elijah Prince, Prince's son; and

     ix.  $10,000 to a savings account in the name of Elisha Prince, Prince's son.

- Legacy transferred or credited approximately $1,007,205 to accounts in the name of Crosswalk Consulting LLC (Crosswalk).  Crosswalk is a Colorado limited liability corporation incorporated on November 6, 2017.  The registered agent is Joseph Prince.

- Roland Vaughn executed a check payable to Joseph Prince in the amount of $2,000.

- Gracewood sent approximately $519,572 to accounts held in the name of Crosswalk.

- Regional transferred or wired $26,000 to an account in the name of Great ExpecTastings Catering (GETC).  GETC is a Colorado limited liability corporation incorporated on December 11, 2015.  The registered agent is Joseph Prince.  Prince is the sole signatory on the bank account.

- Regional executed a check payable to Venture Homes Inc. in the amount of $3,930.  The memo on the check stated "Upgrades Lot 121 Barrington, Joseph & Flavia Prince."

- Regional executed a check payable to Venture Homes Inc. in the amount of $10,107. The memo on the check stated "Venture Homes upgrades on #121 BT for Joseph C. Prince."

- Genesis executed a check payable to Nalunga in the amount of $12,883.

- Andrew Ssekajja executed a check payable to Nalunga in the amount of $6,100.

43.     On June 25, 2018, Marcelline Stripling was interviewed by law enforcement agents at her residence in Georgia. Stripling stated that Prince introduced her to the idea of starting Regional. Prince referred all of the SB beneficiaries that were clients of Regional, to Regional. While operating Regional, Stripling paid $26,000 to Prince which she described as payment for catering services and that Prince sent food to Georgia from Denver. Stripling later retracted that statement and told law enforcement that the money paid to Prince was a gift. Prince directed her to pay the money to a bank account in the name of Great ExpecTastings Catering, a company owned and controlled by Prince, and provided her with the routing and account number. Stripling denied ever having a conversation with Prince about paying him for the referrals he made to Regional.

## V. HEALTH CARE AND WIRE FRAUD

44.     From July 1, 2017 to June 30, 2018, the VA paid out approximately $25.2 million to a combination of 59 home health care agencies for the VA's SB Health Care Benefits Program. Of the total, approximately $18.9 million was paid to the five companies to whom Prince made referrals: Advantage, Genesis, Regional, Legacy, and Gracewood.

45.     There are at least two reasons for the disproportionate payment to the Prince-associated entities: hours inflation and retroactive claim submission.

- The claims submitted by the subject HHAs are often for 18 to 20 hours of health care services per day. While some claims submitted by the HHAs for the Prince-referred beneficiaries are as few as five hours per day, the majority are for twelve or more hours per day. It appears other HHAs are submitting claims for fewer hours than the subject HHAs and include homemaker services, which are billed at a lower rate.

- Once a new beneficiary is signed up by the subject HHAs, they submit retroactive claims for a full year prior for the same high hours. It does not appear that the other HHAs submit claims for prior services.

46.     As identified above, the regulations governing the VA's SB Health Care Benefits Program provide that only certain types of services are covered. The regulations enumerate the types of services covered, such as assistance with personal care and meal preparation. These specific tasks are compensated on a quarter-hour basis, indicating that an accounting of time for each specific service is necessary. Excluded from compensation are services such as "companion services" and personal attendant services that are not health related.

47.     Nevertheless, Prince encouraged beneficiaries and caregivers to whom he spoke to bill for time above and beyond what would be spent on enumerated tasks. For example:

- Prince spoke with beneficiary, E.N., identified above. Prince asked E.N. who his primary caregiver was, and E.N. replied, "myself." E.N. runs a

pool cleaning business and prior to talking to Prince was using home health services only for weekly cleaning of his home.  Prince recommended that E.N.'s wife begin providing homemaking services and be paid for them through a home health agency. Prince sent E.N. a prepopulated Form CMS-485 with Advantage filled in as the provider. In the cover email, Prince states that he added a space for the doctor to indicate how many hours per day, stating it was a "(minimum 8, up to 24)." There is no minimum hour requirement for home services.

- On September 20, 2017, E.N. called Prince to discuss the forms and ask what needs to be signed by the doctor. Prince says, "Home health pays through a provider 16 an hour for 8 hours a day." E.N. says, "That's the grooming," and Prince responds, "yes, and like I told you, I don't care whether she does it or not, you get paid for that sir, so don't leave the money on the table. So she grooms you." Prince continues, "I am not saying cheat, but I'm saying do what Philip Rivers does, cheat all the time."

48.     On August 6, 2018, beneficiary M.E. and caregiver J.M. were interviewed by law enforcement agents. M.E. and J.M. were told by Prince to charge for the maximum number of hours that the doctor said M.E. was eligible for even if J.M. was not actually providing care for that many hours. M.E. and J.M. had independent conversations with Prince on the matter.

49.     On August 10, 2018, caregiver A.T. was interviewed by law enforcement agents. A.T. said that Prince would explain to her that it was a shame that A.T. just

started receiving these benefits despite having cared for her son for his whole life.
Prince told her to charge the maximum number of hours even if she did not work them
because she needed to make up for lost time.

50.    The claims were also fraudulent because Prince knew that the services
were being provided by individuals and home health entities that were not approved
health care providers.

51.    During the timeframe of the alleged scheme, financial transactions out of
the Crosswalk Consulting bank accounts controlled by Prince included:

- $327,000 in transfers to personal bank accounts in the name of Prince
  and Nalunga;

- $135,228 in payments to organizations related to Pastor Chris Hill;

- $58,000 in wire transfers to Timothy St Cyr, a half-brother of Prince;

- $50,000 deposit to a Simplified Employee Pension (SEP) IRA account in
  Prince's name;

- $30,000 to individuals associated to The Potter's House of Denver, a local
  church that Prince was a member;

- $16,350 in payments towards the loan on a 2011 Toyota Sienna
  passenger van registered in Prince's name;

- $15,452 in payments towards student loans;

- $13,000 in deposit to a Betterment Wealth Builder Account in Prince's
  name;

- $13,000 in wire transfers to Jason Prince, a relative of Prince;

- $9,800 in wire transfers to Ghazi Marketing, a company located in Trinidad and Tobago;

- $7,500 payment to Venture Homes as earnest money towards the purchase of a newly constructed home at 2348 Barrington Trace Circle, Atlanta, GA 30331;

- $6,939 payment to Marc Lichtenfeld, author and Chief Income Strategist for the Oxford Club;

- $5,037 to Goldline, a dealer in precious metals; and

- $5,000 wire transfer to June St Cyr, a relative of Prince.

52.     This fraud on the program was also carried out through the one-year retroactive claims submission. Once a caregiver was signed up through a HHA, the HHA, with Prince's assistance, would submit claims for the same number of hours for a full year. Such retroactive claims could result in a payment of approximately $500,000 or more to the HHA for one beneficiary.

53.     As a provider of home health care services, it is the responsibility of the home health agencies (HHA) to submit claims to the VA. The HHAs take the caregivers hand-written hours log, convert the hours to billable units, and submit the claims to the VA.

54.     In many cases, neither Prince nor the subject home health agencies informed the beneficiaries or caregivers that there was a limited set of tasks that were compensable as home health, nor that they were to track the performance of those tasks in 15-minute increments. Often, the subject home health agencies would send "sample" daily log sheets identifying the hours the beneficiary could write down and the

tasks to check off as performed.  In some instances, Prince or others informed

beneficiaries or caregivers that the more boxes they checked the better and not to

identify certain tasks that they completed on the form because they were not

compensable.

## VI.  INDICTMENT AND RELATED INVESTIGATION

55.     On June 21, 2018, Joseph Prince was indicted on seven counts of

violating Title 18 U.S.C. §§ 208(a) and 216(a)(2) (Acts affecting a personal financial

interest).  The indictment alleges that between September 11, 2017, and June 1, 2018,

the VA paid Advantage approximately $4.3 million for claims associated with services

provided to SB beneficiaries.  The indictment alleges that Prince willfully participated

personally and substantially as a Government employee through recommendation, the

rendering of advice, and otherwise, in a particular matter in which to his knowledge his

spouse had a financial interest, namely, through recommendation, referral, and direction

that SB beneficiaries and SB beneficiary caretakers use Advantage in connection with

home health and homemaking services, and for submitting claims to the VA for such

services, provided for the benefit of several SB beneficiaries.

56.     On December 4, 2018, Joseph Prince was indicted on 16 counts of

violating Title 18 U.S.C. § 1347 (Health care fraud). The indictment alleges that between

about June 2017 and June 2018 along with others known and unknown knowingly and

willfully executed and attempted to execute a material scheme to defraud the VA SB

health care benefits program in connection with the delivery of and payment for health

care benefits, items and services. Prince would tell beneficiaries and/or caregivers that

the VA would pay for 24 hours of care per day and would encourage the caregivers to

charge for every moment that they spent with the beneficiary. He would not explain to them the tasks that the VA actually paid for caregivers to perform for the beneficiaries. In addition, Prince would tell them they could submit claims for services provided one full year retroactive to when they would sign up as a contractor.

57.     On December 4, 2018, Joseph Prince was also indicted on 6 counts of Title 18 U.S.C. § 201(c)(1)(B) (Bribery of public officials and witnesses).  The indictment alleges that Prince accepted approximately $623,848 in payments from Legacy and Gracewood for his official actions, that is, the recommendation, referral, and direction that SB beneficiaries and SB beneficiary caregivers use Legacy and Gracewood in connection with home health services and for submitting claims to the VA for such services.

58.     On December 4, 2018, Roland Vaughn was indicted on 3 counts of Title 18 U.S.C. § 201(c)(1)(A) (Bribery of public officials and witnesses). The indictment alleges that Vaughn paid Prince, a VA employee approximately $411,736 in three separate payments for and because of an official act performed by Prince in his official capacity at the VA, that is, the recommendation, referral and direction that SB beneficiaries and SB beneficiary caregivers use Legacy in connection with home health services, and for submitting claims to the VA for such services.

59.     On December 4, 2018 Joseph Prince and Roland Vaughn were indicted on one count of Title 18 U.S.C. § 371 (Conspiracy to commit and offense against the United States). The indictment alleges that Prince and Vaughn conspired to pay gratuities to Prince as a public official in violation of Title 18 U.S.C. § 201(c)(1)(A).

60.     On December 4, 2018, Joseph Prince was also indicted on 8 counts of Title 18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).  The indictment alleges that Prince knowingly engaged in monetary transactions exceeding $10,000 that were derived from specified unlawful activities, that is health care fraud in violation of Title 18 U.S.C. § 1347 or soliciting and receiving gratuities in violation of Title 18 U.S.C. § 201(c)(1)(B).

61.     On December 4, 2018 Joseph Prince was also indicted on 3 counts of Title 18 U.S.C. § 1956(a)(1)(B)(i) (Laundering of monetary instruments). The indictment alleges that Prince conducted transactions using proceeds of specified unlawful activities, that is soliciting and receiving gratuities in violation of Title 18 U.S.C. § 201(c)(1)(B), designed to conceal and disguise the source, ownership, and control of those proceeds.

62.     On August 22, 2019, Prince was indicted in a Second Superseding Indictment that supersedes his prior counts.  He was indicted on 11 counts of financial conflict of interest, 18 U.S.C. § 208, 10 counts of health care fraud, 18 U.S.C. § 1347, 1 count of conspiracy, 18 U.S.C. § 371, 7 counts of soliciting/receiving an illegal gratuity, 18 U.S.C. § 201(c), 6 counts of soliciting/receiving an illegal kickback, 42 U.S.C. § 1320a-7b(b), 8 counts of unlawful monetary transactions, 18 U.S.C. § 1957, and 3 counts of concealment money laundering, 18 U.S.C. § 1956(a)(1)(B)(i).

## VII.    FLOW OF FUNDS

### Regional Home Health Care Systems, LLC
### *Regional Bank of America Account #9012*

63.     Marcelline McCrea opened Bank of America (BOA) business checking account #334055019012 (Regional BOA account #9012) in the name of Regional Home Health Care Systems, LLC on August 23, 2017.  Marcelline McCrea is the sole signor on the account.

64.     From October 10, 2017, to June 29, 2018, the only significant source of funds to Regional BOA account #9012 received deposits from the U.S. Treasury of approximately $5,800,423.00.  These U.S. Treasury checks represent reimbursement for the VA SB health care benefits program.

65.     From October 10, 2017, to June 29, 2018, significant uses of funds from Regional BOA account #9012 included payments to caregivers of approximately $631,807; purchase of 445 Kendrick Terrace SW, Atlanta, GA 30331 for $429,947; Haverty's and Rooms to Go, totaling approximately $117,315; Clayton Homes $99,227; purchase of a 2015 Chevrolet Suburban from Nash Chevrolet for $41,252; purchase of a 2014 F-150 from CarMax for $33,935; Sono Bello Plastic Surgery Center of $28,400; purchase from the Atlanta Hawks of approximately $10,000; and cash withdrawals of $8,760.

66.     Additionally, account transfers and wires, totaling $525,841 were sent from Regional BOA account #9012 to the following individuals and businesses: Khandice McCrea-Smith ($325,147); Ronnie Stripling ($72,187); Peter A. Prince ($42,300); Lisa Bissoon ($41,932); Great ExpecTastings Catering ($26,000); Khadijah McCrea ($8,600); Ghazi Marketing ($5,000); and Dwayne Nunez ($4,675);

67.    Khandice McCrea-Smith and Khadijah McCrea are Marcelline McCrea's daughters.  Peter A. Prince is Joseph Prince's brother.  Payments to Ghazi Marketing, Dwayne Nunez, and Lisa Bissoon were deposited at banks in Trinidad and Tobago.

68.    This account #9012 was closed on September 12, 2018 due to a Federal Seizure warrant being served on the bank on June 29, 2018, and all funds held in the account at that time were sent to the US Marshals service totaling $263,000.00. However, prior to the execution of the seizure warrant, several transfers were made from this account into related Bank of America accounts.

### *Regional Bank of America Account #2506*

69.    On January 24, 2018, Marcelline McCrea opened BOA business savings account #334056082506 (Regional BOA account #2506) in the name of Regional Home Health Care Systems, LLC.  Marcelline McCrea is the sole signor on the account.

70.    From January 25, 2018 to June 11, 2018, the only significant source of funds to Regional BOA account #2506 were account transfers from Regional BOA account #9012 of approximately $2,916,000.  These transfers represent proceeds of the fraud scheme.

71.    From January 25, 2018 to June 11, 2018, the significant use of funds from Regional BOA account #2506 were transfers to Regional BOA account #9012 of approximately $1,089,875; the purchase of a house at 4236 Pepperdine Drive, Decatur, GA 30034 of approximately $73,975; purchase of a 2017 BMW 330i from BMW of South Atlanta for approximately $54,370; and purchase of a 2007 Transcraft Corp Flatbed Trailer from Triton Trucks and Equipment, for approximately $18,749.

72.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Regional BOA account #2506 and seized $1,491,204.76.  However, prior to the execution of the seizure warrant, several transfers were made from this account into related Bank of America accounts.

**Intermediary Bank of America Accounts opened in March, 2018.**

73.     In March 2018, Marcelline McCrea opened at least three additional accounts with Bank of America in the names of Regional Home Healthcare Systems, East LLC.  As set forth below, these accounts received transfers from Regional BOA account #2506 and Regional BOA account #9012.

74.     In September 2018, Bank of America closed all of these accounts and remitted cashier's checks for the remaining balances.  These cashier's checks were subsequently deposited into Wells Fargo accounts.

### *Intermediary Regional East Bank of America Account #5713*

75.     On March 28, 2018, Marcelline McCrea opened Bank of America account #334047935713 titled Regional Home Healthcare Systems, East LLC (Regional East BOA account #5713).  McCrea and Joseph C. Prince are signors on this account.

76.     On June 5, 2018, an online banking transfer was made from Regional BOA account #9012 to Regional East BOA account #5713, in the amount of $271,340.00.  This transfer represents proceeds from the fraud scheme.

77.     From March 28, 2018 to June 19, 2018, the only source of funds to Regional East BOA account #5713 were transfers from other Regional and Regional East accounts, totaling approximately $368,440, which also comprised of funds from the

fraud scheme.  From May 23, 2018 to May 31, 2018, Regional East account #5705 transferred approximately $97,100 to Regional East account #5713.

78.     On approximately September 12, 2018, Bank of America closed Regional East account #5713 and sent cashier's check number 1278166 to Regional Home Healthcare Systems, East LLC, totaling $180,116.81.

### *Intermediary Regional East Bank of America Account #3532*

79.     On March 28, 2018, Marcelline McCrea opened Bank of America account #334056613532 titled Regional Home Healthcare Systems, East LLC (Regional East BOA account #3532).  McCrea and Joseph C. Prince are signors on this account.

80.     On June 18, 2018, a wire transfer was made from Regional BOA account #9012 to Regional East BOA account #3532 in the amount of $218,592.00.  This transfer represents proceeds of the fraud scheme.

81.     On approximately September 12, 2018, Bank of America closed the account #3532 and sent cashier's check number 1278168 to Regional Home Healthcare Systems, East LLC in the amount of $218,726.03.

### *Intermediary Regional East Bank of America Account #5705*

82.     On March 28, 2018, Marcelline McCrea opened Bank of America account #334047935705 titled Regional Home Healthcare Systems, East LLC (Regional East BOA account #5705).  McCrea and Joseph C. Prince are signors on this account.

83.     From March 28, 2018 to June 19, 2018, the only source of funds to Regional East BOA account #5705 were transfers from other Regional and Regional East accounts, totaling $127,100.  On May 22, 2018, Regional account #2506 transferred approximately $107,000 to Regional East account #5705.  From March 28,

2018 to June 19, 2018, Regional East account #5713 transferred approximately $20,100 to Regional East account #5705.

84.    On approximately September 12, 2018, Bank of America closed this account #5705 and sent cashier's check number 1278165 to Regional Home Healthcare Systems, East LLC in the amount of $29,800.00.

### Regional's Wells Fargo Bank Accounts

85.    On September 24, 2018, after the United States executed seizure warrants, search warrants, and conducted interviews in relation to the underlying conduct, Marcelline McCrea opened Wells Fargo account #1442712780 in the name of Regional Home Health Care Systems, LLC (Regional WF account #2780) and account #1442712798 in the name of Regional Home Health Care Systems, East LLC (Regional East WF account #2798).  The signors on these accounts were Marcelline McCrea, Ronnie Stripling, and Khadijah McCrea.  Notably, Joseph Prince was no longer a signor on this account associated with Regional Home Health Care Systems, East LLC.

86.    As set forth below, these accounts were opened with the intent to deposit funds traceable to the V.A. Spina Bifida program, which Marcelline McCrea, Ronnie Stripling, and Khadijah McCrea knew at that time were alleged to be fraud proceeds and subject to forfeiture.

### *Wells Fargo Bank Account #2780*

87.    On September 24, 2018, Bank of America cashier's checks 1278164 and 1278167 dated September 13, 2018 and payable to Regional Home Healthcare Systems, LLC in the amounts of $149,718.04 (Regional BOA account #9012) and

$73.62 (Regional Home Healthcare Systems, LLC BOA account #334055767354), respectively, were deposited to Regional WF account #2780.

88.     On November 1, 2018, Bank of America cashier's Check 34434942 dated October 12, 2018 and payable to Regional Home Health in the amount of $39.19 (Regional BOA account #2506) was deposited to Regional WF account #2780.

89.     Marcelline McCrea opened Regional Home Healthcare Systems, LLC BOA account #334055767354 on December 13, 2017 (Regional BOA account #7354). Marcelline McCrea is the sole signor on the account.  From December 13, 2017 to May 31, 2018, the only significant source of funds to Regional BOA account #7354 were account transfers from Regional BOA account #9012 and Regional BOA account #2506, totaling approximately $618,617.

90.     In total $149,830.85 was transferred from Regional Bank of America accounts to Regional WF account #2780.  The source of these deposit was the closing of Regional BOA accounts #9012, #2506, and #7354.

91.     There were no other significant deposits into Regional WF account #2780 between its opening on September 24, 2018 and April 4, 2019.  The balance in the account on March 31, 2019 was $4,600.67.

92.     These funds were primarily spent on $62,203.81 in cash withdrawals, $11,250.00 to the Atlanta Falcons, $18,500.00 towards a vehicle payment, and $22,933.00 on home improvements.

### *Defendant funds in Wells Fargo Bank Account #2798*

93.     On September 24, 2018, Bank of America cashier's check 1278165 dated September 13, 2018 and payable to Regional Home Healthcare Systems, East LLC in

the amount of $29,800.00 was deposited into Regional East WF account #2798 The source of funds was the account closing of Regional East BOA account #5705.

94.     On October 4, 2018, Bank of America cashier's check 1278166 dated September 13, 2018 and payable to Regional Home Healthcare Systems, East LLC in the amount of $180,116.81 was deposited into Regional East WF account #2798. The source of the funds was the account closing of Regional East BOA account #5713.

95.     Additionally, on October 4, 2018, Bank of America cashier's check 1278168 dated September 13, 2018 and payable to Regional Home Healthcare Systems, East LLC in the amount of $218,726.03 was deposited into Regional East WF account #2798. The source of funds was the account closing of Regional East BOA account #3532.

96.     In total, $428,642.84 was transferred from Regional Bank of America accounts to Regional East WF account #2798.

97.     There were no other significant deposits into Regional East WF account #2798 between its opening on September 24, 2018 and the date of execution of a seizure warrant on March 22, 2019.

98.     On March 22, 2019, law enforcement executed a seizure warrant for the funds held in Regional East WF account #2798.  On April 19, 2019, law enforcement received a check in the amount of $273,153.89 from Wells Fargo, representing the funds seized from this account.

99.     The remaining $155,538.95 was primarily spent on $107,387 in cash withdrawals, $10,000 to a church, and $29,133.00 on home improvements.

## VERIFICATION OF KRISTEN VAREL

## SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, Special Agent, Kristen Varel, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_Kristen Varel_
Kristen Varel
Special Agent – FBI

STATE OF COLORADO      )
                                           )ss
COUNTY OF ARAPAHOE    )

The foregoing was acknowledged before me this 27th day of August 2019 by Kristen Varel, Special Agent, Federal Bureau of Investigation.

SARAH SALAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174015331
MY COMMISSION EXPIRES APRIL 10, 2021

_Sarah M Salas_
Notary Public – Colorado
My Commission Expires: April 10, 2021

## FIRST CLAIM FOR RELIEF

100.    The Plaintiff repeats and incorporates by reference the paragraphs above.

101.    By the foregoing and other acts, defendant all funds held in Regional Home Healthcare Systems Wells Fargo Checking Account #1442712798, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SECOND CLAIM FOR RELIEF

102.   The Plaintiff repeats and incorporates by reference the paragraphs above.

103.   By the foregoing and other acts, defendant all funds held in Regional Home Healthcare Systems Wells Fargo Checking Account #1442712798, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant properties in favor of the United States, that the United States be authorized to dispose of the properties in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant properties and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 3rd day of September, 2019.

Respectfully submitted,

JASON R. DUNN
United States Attorney


By: s/Tonya S. Andrews
Tonya S. Andrews
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: tonya.andrews@usdoj.gov
*Attorney for the United States*